Ben M. Davidson (State Bar No. 181464)
DAVIDSON LAW GROUP, ALC
11377 West Olympic Boulevard
Los Angeles, California 90064
Telephone: (310) 473-2300
Facsimile: (310) 473-2941
Email: bdavidson@davidson-lawfirm.com

Nadya C. Davis (*pro hac vice* application pending)
HOLLAND & HART, LLP
1800 Broadway, Suite 300
Boulder, Colorado 80302
Telephone: (303) 473-2700
Facsimile: (303) 473-2720
E-mail: ncdavis@hollandhart.com

Attorneys for Plaintiff
RE/MAX, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RE/MAX, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL FINANCIAL INVESTMENT CORP., a California Corporation, d/b/a RE/MAX REALTY GROUP and MICHAEL D'AMBRA, an individual,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br>**(1) TRADEMARK COUNTERFEITING UNDER 15 U.S.C. § 1114;**<br>**(2) TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114(1);**<br>**(3) UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(A);**<br>**(4) COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501;**<br>**(5) TRADEMARK INFRINGEMENT UNDER CAL. BUS. & PROF. CODE § 14200;**<br>**(6) UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE § 17200;**<br>**(7) COMMON LAW BREACH OF CONTRACT;**<br>**(8) COMMON LAW UNFAIR COMPETITION; AND**<br>**(9) COMMON LAW TRADEMARK INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff RE/MAX, LLC ("RE/MAX") for its Complaint against Defendants National Financial Investment Corp. ("NFIC"), d/b/a RE/MAX Realty Group, and Michael D'Ambra ("D'Ambra") (collectively, "Defendants"), alleges as follows:

### Nature of the Action

In this action against the former franchise owner and operator of a terminated RE/MAX real estate brokerage office in San Mateo, who continues to hold himself out as an authorized RE/MAX franchisee, RE/MAX seeks injunctive and monetary relief for direct and contributory acts of trademark counterfeiting, trademark infringement, and unfair competition under the Federal Trademark Act, 15 U.S.C. § 1051 *et seq.*, copyright infringement under the U.S. Copyright Act, 17 U.S.C. § 501 *et seq.*, trademark infringement under Cal. Bus. & Prof. Code § 14200 *et seq.*, unfair competition under Cal. Bus. & Prof. Code § 17200 *et seq.*, and breach of contract, unfair competition, and trademark infringement under the common law of the state of California.

### The Parties

1. RE/MAX is a Delaware limited liability company with its principal place of business at 5075 South Syracuse Street, Denver, Colorado 80237.

2. Upon information and belief, National Financial Investment Corp. is a California corporation doing business as RE/MAX Realty Group, which provides real estate sale and brokerage services in this District, with its principal place of business at 2 West 5th Avenue, San Mateo, CA 94402.

3. Upon information and belief, and according to the California Secretary of State public records, Michael D'Ambra is an individual residing within this District and is the Registered Agent for and President of NFIC.

### Jurisdiction and Venue

4. This action arises under §§ 1114 and 1125(a) of the Lanham Act, 15 U.S.C. § 1051 *et seq.*; 17 U.S.C. § 501 *et seq.* of the U.S. Copyright Act; Cal. Bus. & Prof. Code § 14200 *et seq.* and § 17200 *et seq.*; and the common law of the state of California.

5. The Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 1367.

6. This Court has personal jurisdiction over Defendants because Defendants conduct business in and/or reside in the state of California and caused an injury to RE/MAX in this District.

7. Venue is proper within this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants reside in this District, may be found in this District, and/or a substantial part of the events giving rise to the claims in this action occurred within this District.

**Background**

8. Operating throughout the United States, the RE/MAX franchise network (the "RE/MAX Network") is a real estate system of independently owned and operated franchised offices and their affiliated independent contractor/sales associates who are authorized to use the RE/MAX trademarks in connection with providing real estate brokerage services.

9. Since the 1970's, those affiliated with the RE/MAX Network have provided real estate brokerage services in interstate commerce in the United States in connection with the RE/MAX and REMAX word marks, including a stylized form distinguished by "REMAX" in all capital letters in red or blue, accented with a contrasting red or blue diagonal slash, an example of which is set forth below:



a service mark consisting of a hot air balloon design, an example of which is set forth below:



2
**COMPLAINT**

1 and the RE/MAX for sale sign design, examples of which are set forth below:



9    10.    RE/MAX owns numerous U.S. Trademark Registrations for a family of marks that includes those set forth above, including, but not limited to, U.S. Trademark Registration Nos. 1,139,014; 1,173,586; 1,691,854; 1,702,048; 1,720,592; 1,900,865; 1,902,982; 2,106,387; 2,119,607; 2,403,626; 2,850,985; 3,296,461; 3,338,086; 4,716,534; and 4,986,346.  Copies of the registration certificates for these marks are attached as **Exhibit A.**

11.    With the exception of Registration Nos. 4,716,534 and 4,986,346, all of the above U.S. Trademark Registrations have achieved incontestability status under 15 U.S.C. § 1065.

12.    Registration Nos. 4,716,534 and 4,986,346 are valid and subsisting and therefore constitute prima facie evidence of the validity of the marks set forth in these registrations and RE/MAX's exclusive right to use these marks in connection with the services set forth in these registrations.

13.    RE/MAX also owns California State Trademark Registration No. 37219 covering its for sale sign design.  A copy of RE/MAX's California registration is attached hereto as **Exhibit B**.

14.    The federal registration rights, state registration rights, and common law rights of RE/MAX in the trademarks described above are collectively referred to as the "RE/MAX Marks."

15. RE/MAX also owns U.S. Copyright Registration No. VA-1-418-052 covering , No. VA 1-418-053 covering , and No. VAu 1-187-335 covering various photographs of the RE/MAX balloon design mark, collectively, the "Copyrighted Works").  Copies of these registrations certificates are attached as **Exhibit C**.

16. The RE/MAX Marks and Copyrighted Works are used by those in the RE/MAX Network on a variety of advertising media including property listings, property signage, directional signs, open house signs, Internet websites, business cards, television commercials, billboards, bus stop benches, banners, and other advertising and promotional items.

17. Since 1973, RE/MAX and the RE/MAX Network have invested billions of dollars to develop, promote, and maintain the RE/MAX Marks, among other marks owned by RE/MAX, in the United States and worldwide.

18. Franchisees and their sales associates in the RE/MAX Network ("Sales Associates") have used the RE/MAX Marks in connection with representing either the buyer or the seller more than 25 million times in real estate sale transactions in the United States and worldwide, resulting in over five trillion dollars in sales volume from 1973 to the present.

19. At any given time, there are more than 250,000 RE/MAX property listings in the United States, almost all of which display prominently a listing sign similar to those set forth above.

20. As a result of substantial sales and extensive advertising and promotion, the RE/MAX Marks have become widely and favorably known as identifying real estate brokerage services originating from, sponsored by, or associated with the RE/MAX Network.

21. The public has come to associate the well-known and distinctive RE/MAX Marks with the RE/MAX Network as a source of high quality real estate brokerage services.

**The RE/MAX Realty Group Franchise Agreement**

22. Prior to the franchise agreement at issue in this case, D'Ambra entered into prior franchise agreements to own and operate RE/MAX franchises in California. In fact, from 1997 to 2007, D'Ambra owned multiple RE/MAX offices. To the best of RE/MAX's knowledges, D'Ambra de-identified his business from RE/MAX each time his prior offices closed, as required under the applicable franchise agreements.

23. On February 22, 2011, NFIC entered into a five-year franchise agreement with RE/MAX, d/b/a RE/MAX California and Hawaii Region, to own and operate a RE/MAX real estate brokerage using the RE/MAX Marks under the trade name RE/MAX Realty Group (the "Franchise Agreement") to be operated at 2 West 5th Avenue, 4th Floor, San Mateo, California, a copy of which is attached as **Exhibit D**.

24. On the same day, D'Ambra entered into an agreement with RE/MAX under which D'Ambra personally guaranteed full performance under the Franchise Agreement and agreed to be personally bound by and liable for breach of the same (the "Guaranty"), a copy of which is attached as **Exhibit E**.

25. The Franchise Agreement further provides that as the owner of NFIC, D'Ambra is personally liable for certain breaches of the Franchise Agreement.

26. Certain provisions of the Franchise Agreement expressly survive its termination and remain enforceable, as discussed in more detail below.

27. From approximately February 2011 through September 25, 2015, RE/MAX Realty Group operated as a RE/MAX franchise in San Mateo, California, with D'Ambra serving as manager and broker.

28. The Franchise Agreement provides that, upon termination, NFIC and D'Ambra must:

    a. immediately and clearly distinguish their operations from RE/MAX and not directly or indirectly at any time identify any business with which they are associated as being a current or former RE/MAX office or franchisee, or otherwise hold themselves out to the public in any way as being or having been affiliated with RE/MAX;

   b. immediately remove the RE/MAX Marks from their storefront and premises, and from all advertising, marketing, and promotional materials, websites (including third-party directory listings) and other materials;

   c. immediately cancel all trade, fictitious, or assumed names that contain any reference to any RE/MAX Mark;

   d. immediately notify the state real estate commission, local board of REALTORS®, National Association of REALTORS®, and their clients that they are no longer affiliated with RE/MAX;

   e. immediately cancel or transfer to RE/MAX all logins or identifiers, including social media screen names and e-mail addresses, that contain any reference to any RE/MAX Marks; and

   f. refrain from adopting or using in any manner, or for any purpose, the RE/MAX Marks and any mark confusingly similar to the RE/MAX Marks.

29. On September 29, 2015, pursuant to Paragraph 13 of the Franchise Agreement, RE/MAX sent Defendants a notice of termination of the Franchise Agreement for failure to cure delinquent account balances.

30. At the time of termination, Defendants owed $1,373.62 in unpaid and late fees for which they were responsible under the Franchise Agreement.

31. The Franchise Agreement provides that termination or expiration does not terminate monetary obligations, and in its termination letter, RE/MAX specifically reminded Defendants of their contractual obligations upon termination, as set forth above.

**Defendants' Acts of Breach, Counterfeiting, and Infringement**

32. Despite termination of the Franchise Agreement, Defendants have continued to advertise and offer their real estate and brokerage services in San Mateo in connection with the RE/MAX Marks and Copyrighted Works, including use of the RE/MAX Realty Group trade name and use of the RE/MAX Marks and Copyrighted Works on various websites, including on Defendants' website www.thepeninsulashowcase.com/why-remax, (other examples set forth in

1  **Exhibit F**), and on storefront signage, including as set forth below (storefront on left; website on the
2  right:




11      33.     On December 19, 2016, RE/MAX sent Defendants a letter, again reminding them of
12  their de-identification obligations under the Franchise Agreement, and demanding that Defendants
13  cease all use of the RE/MAX Marks and Copyrighted Works.

14      34.     Nevertheless, Defendants and their Sales Associates continue to breach the Franchise
15  Agreement and infringe the RE/MAX Marks and Copyrighted Works by making unauthorized use of
16  same to market and offer their real estate brokerage services.

17      35.     Defendants' and their Sales Associates' actions have caused, and will continue to
18  cause, RE/MAX monetary and other damages, at a minimum, in an amount to consist of reasonable
19  franchise royalty payments for the continued use of the RE/MAX Marks and Copyrighted Works
20  since termination of the Franchise Agreement, as well as additional damages caused to RE/MAX as
21  a result of Defendants' actions.

22      36.     Had the Franchise Agreement continued in force, in order to be entitled to use the
23  RE/MAX Marks following termination on September 25, 2015, Defendants would have owed
24  various fees set forth in the Franchise Agreement, including a renewal fee of $8,500 (which would
25  have been due February 22, 2016), and other fees owed on an ongoing basis, including a Continuing
26  Franchise Fee ($128.00 from October 2015 – June 2016 and $133 from July 2016 to present) per
27  month per Sales Associate, plus the Broker Fee of 1% of RE/MAX Realty Group's gross

commission revenues; an Advertising Fee in the amount of $101.00 per month per Sales Associate; and Annual Dues in the amount of $400 per year (or $33.33 per month, pro rata) per Sales Associate.

37. According to the California real estate commission records, NFIC currently has two licensed agents. Therefore, at a minimum, Defendants would owe fees in the amount of $521.66 per month for the October 2015 through June 2016 period and $534.66 from July 2016 through present, plus 1% of their revenue.

38. As a result, had the Franchise Agreement remained in force, in addition to the $1,373.62 in past-due fees owed at the time of termination, Defendants would have owed a minimum of approximately $18,541.54 through the end of April 2017, and counting, in order to continue using the RE/MAX Marks and Copyrighted Works

39. Pursuant to the Franchise Agreement, RE/MAX is further entitled to liquidated damages in the amount of $500 for each day following the date of termination, after passage of a 10-day period, during which Defendants failed to timely perform their obligations upon termination. RE/MAX is also entitled to specific performance, injunctive relief, costs, and expenses, including reasonable attorneys' fees, incurred as a result of enforcing the Franchise Agreement.

40. Defendants' infringing use of the RE/MAX Marks began subsequent to RE/MAX's first use and registration of the RE/MAX Marks. In addition, Defendants began making unauthorized use of RE/MAX's Copyrighted Works well subsequent to the creation and fixation of the Works shown in RE/MAX's copyright registrations and subsequent to RE/MAX's registration of those works.

41. Upon information and belief, Defendants and their Sales Associates will continue to commit the acts complained of in this Complaint unless enjoined.

42. Defendants are profiting from or have profited from, or at the very least are aware of or willfully blind to, the acts of counterfeiting, infringement, and unfair competition by their Sales Associates, and are therefore contributorily liable for these acts.

43. Moreover, the Franchise Agreement requires Defendants to supervise their Sales Associates to ensure proper use of the RE/MAX Marks, and states that default under the Franchise

1  Agreement caused by one of Defendants' Sales Associates constitutes a material default of the
2  Franchise Agreement.

3      44. Upon information and belief, Defendants' acts were knowingly, deliberately, and
4  intentionally carried out in bad faith, or with a reckless disregard for, or with willful blindness to,
5  RE/MAX's rights, for the purpose of causing confusion and/or trading on RE/MAX's reputation,
6  thereby rendering this an exceptional case within the meaning of 15 U.S.C. § 1117(a).

7      45. Upon information and belief, Defendants have profited and continue to profit from
8  their unlawful acts.

9      46. Defendants' infringement, counterfeiting, and breach of contract has caused and will
10 continue to cause damages to RE/MAX, including monetary damages and damage to RE/MAX's
11 hard-earned goodwill and reputation, as well as diminished control over the use of the RE/MAX
12 Marks and the quality of services offered under the RE/MAX Marks.

## COUNT I

### Trademark Counterfeiting Under Federal Statute

### (15 U.S.C. § 1114)

16     47. RE/MAX realleges the allegations in each of the paragraphs above.

17     48. This is a claim for counterfeit use of RE/MAX's federally registered Marks as
18 depicted in **Exhibit A**.

19     49. Defendants and their Sales Associates have used in commerce spurious designations
20 that are identical to, or substantially indistinguishable from, the RE/MAX Marks, or that contain
21 elements that are identical to, or substantially indistinguishable from, elements of the RE/MAX
22 Marks, in connection with services covered by registrations for the RE/MAX Marks.

23     50. Defendants and their Sales Associates have used and are using these spurious
24 designations knowing they are counterfeit in connection with the advertisement, promotion, and sale
25 of their services.

26     51. Defendants' and their Sales Associates' use of the RE/MAX Marks to advertise and
27 promote their real estate brokerage services was and is without the consent of RE/MAX.

52. Defendants' and their Sales Associates' conduct is likely to cause confusion, mistake, or deception as to the source or origin of their real estate services, or the affiliation, sponsorship, or other relationship between the parties in violation of 15 U.S.C. § 1114.

53. Defendants' and their Sales Associates' conduct also constitutes an attempt to trade on the goodwill that RE/MAX has developed in the RE/MAX Marks, all to the damage of RE/MAX.

54. By their conduct, Defendants and their Sales Associates have caused RE/MAX irreparable harm, damage, and injury, and will continue to do so unless restrained and enjoined by this Court from further counterfeiting the RE/MAX Marks.

55. RE/MAX has no adequate remedy at law.

## COUNT II

### Trademark Infringement Under Federal Statute

### (15 U.S.C. § 1114(1))

56. RE/MAX realleges the allegations contained in the paragraphs above.

57. This is a claim for infringement of RE/MAX's federally registered Marks as depicted in **Exhibit A**.

58. Defendants' and their Sales Associates' conduct is likely to cause confusion, mistake, or deception as to the source or origin of their real estate brokerage services, or the affiliation, sponsorship, or other relationship between Defendants and RE/MAX in violation of 15 U.S.C. § 1114(1).

59. Defendants' and their Sales Associates' conduct also constitutes an attempt to trade on the goodwill that RE/MAX has developed in the RE/MAX Marks, all to the damage of RE/MAX.

60. By their conduct, Defendants and their Sales Associates have caused RE/MAX irreparable harm, damage, and injury and will continue to do so unless restrained and enjoined by this Court from further infringing the RE/MAX Marks.

61. RE/MAX has no adequate remedy at law.

///

///

///

10
COMPLAINT

## COUNT III

### Unfair Competition Under Federal Statute

### (15 U.S.C. § 1125(a))

62. RE/MAX realleges the allegations contained in the paragraphs above.

63. This is a claim for unfair competition, arising from Defendants' and their Sales Associates' unlawful acts, including, without limitation, use of false designation of origin which is likely to cause confusion, mistake, or deception as to origin, sponsorship, or approval in violation of 15 U.S.C. § 1125(a).

64. Defendants' and their Sales Associates' conduct also constitutes an attempt to trade on the goodwill that RE/MAX has developed in the RE/MAX Marks, all to the damage of RE/MAX.

65. By their conduct, Defendants and their Sales Associates have caused RE/MAX irreparable harm, damage, and injury and will continue to do so unless restrained and enjoined by this Court from further unfairly competing with RE/MAX by infringing the RE/MAX Marks.

66. RE/MAX has no adequate remedy at law.

## COUNT IV

### Copyright Infringement Under Federal Statute

### (17 U.S.C. § 501)

67. RE/MAX realleges the allegations contained in each of the paragraphs above.

68. This is a claim for infringement of RE/MAX's Copyrighted Works, as set forth in **Exhibit C,** arising from Defendants' and their Sales Associates' unauthorized reproduction and distribution of RE/MAX's Copyrighted Works.

69. RE/MAX is the sole and lawful owner of all right, title, and interest in and to the copyrights in the Copyrighted Works, and these copyrights are valid and subsisting and have been valid and subsisting at all times since their inception.

70. Defendants and their Sales Associates are not authorized to use RE/MAX's Copyrighted Works in any way.

71. Defendants and their Sales Associates willfully copied RE/MAX's original works by making or having made advertising and marketing materials that bear designs that are identical or substantially similar to RE/MAX's Copyrighted Works, including after Defendants' limited license to use such Works terminated.

72. Defendants and their Sales Associates acted with actual or constructive knowledge of RE/MAX's rights in their Copyrighted Works, and Defendants' infringement began after RE/MAX secured its copyright registrations, such that their actions constitute willful infringement of RE/MAX's Copyrighted Works through direct infringement, contributory infringement, and/or inducement to infringe.

73. Defendants have a bad faith intent to profit from, and have profited from, the use of RE/MAX's Copyrighted Works.

74. As a result of Defendants' and their Sales Associates' conduct, Defendants have realized and continue to realize profits and other benefits that belong to RE/MAX, entitling RE/MAX to an award of damages pursuant to 17 U.S.C. §§ 504 and 505.

75. By their conduct, Defendants and their Sales Associates have caused RE/MAX irreparable harm, damage, and injury, and will continue to do so unless restrained and enjoined by this Court from further infringing RE/MAX's Copyrighted Works.

76. RE/MAX has no adequate remedy at law.

## COUNT V

### Trademark Infringement Under California Statute

### (Cal. Bus. & Prof. Code § 14200, *et seq.*)

77. RE/MAX realleges the allegations contained in the paragraphs above.

78. This is a claim for trademark infringement of RE/MAX's California state registered trademark, as depicted in the attached **Exhibit B**.

79. Defendants' and their Sales Associates' conduct, as complained of in this Complaint, is likely to cause confusion, mistake, or deception as to the source or origin of their real estate services, or the affiliation, sponsorship, or other relationship between Defendants and RE/MAX, in violation of Cal. Bus. & Prof. Code § 14200, *et seq.*

1  80. Defendants' and their Sales Associates' conduct also constitutes an attempt to trade on the goodwill that RE/MAX has developed in the RE/MAX Marks, all to the damage of RE/MAX.

81. By their conduct, Defendants and their Sales Associates have caused RE/MAX irreparable harm, damage, and injury and will continue to do so unless restrained and enjoined by this Court from further infringing the RE/MAX Marks.

82. RE/MAX has no adequate remedy at law.

## COUNT VI

### Unfair Competition Under California Statute

### (Cal. Bus. & Prof. Code § 17200, *et seq.*)

83. RE/MAX realleges the allegations contained in the paragraphs above.

84. This is a claim for unfair competition in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, arising from Defendants' and their Sales Associates' unlawful acts, including, without limitation, use of a false designation of origin which is likely to cause confusion, mistake, or deception as to origin, sponsorship, or approval.

85. Defendants' and their Sales Associates' conduct also constitutes an attempt to trade on the goodwill that RE/MAX has developed in the RE/MAX Marks, all to the damage of RE/MAX.

86. By their conduct, Defendants and their Sales Associates have caused RE/MAX irreparable harm, damage, and injury and will continue to do so unless restrained and enjoined by this Court from further unfairly competing by infringing the RE/MAX Marks.

87. RE/MAX has no adequate remedy at law.

## COUNT VII

### Breach of Contract

### (Under Colorado Common Law)

88. RE/MAX realleges the allegations contained in each of the paragraphs above.

89. This is a claim for breach of the Franchise Agreement.

90. The Franchise Agreement is valid and enforceable.

13
**COMPLAINT**

91. Defendants have willfully and materially breached the Franchise Agreement, including by continuing to use the RE/MAX Marks and Copyrighted Works post termination of the Franchise Agreement and by failing to satisfy payment obligations under the Franchise Agreement.

92. RE/MAX has fully performed its obligations under the Franchise Agreement.

93. Defendants' unlawful conduct has caused and, unless restrained, will continue to cause damages and irreparable harm to RE/MAX.

94. RE/MAX has no adequate remedy at law.

## COUNT VIII

### Unfair Competition

### (Under California Common Law)

95. RE/MAX realleges the allegations contained in the paragraphs above.

96. This is a claim for common law unfair competition.

97. Defendants' and their Sales Associates' conduct misappropriates RE/MAX's valuable intellectual property rights and trades on the goodwill symbolized by the distinctive RE/MAX Marks and the RE/MAX distinguishing characteristics, and is thereby likely to cause confusion or deception.

98. By their conduct, Defendants and their Sales Associates have engaged in unfair competition in violation of the common law of unfair competition in the state of California.

99. By their conduct, Defendants and their Sales Associates have caused RE/MAX irreparable harm, damage, and injury and will continue to do so unless restrained and enjoined by this Court from further unfairly competing with RE/MAX by infringing the RE/MAX Marks.

100. RE/MAX has no adequate remedy at law.

## COUNT IX

### Trademark Infringement

### (Under California Common Law)

101. RE/MAX realleges the allegations contained in each of the paragraphs above.

102. This is a claim for infringement of RE/MAX's common law trademark rights.

103. Defendants' and their Sales Associates' conduct is likely to cause confusion, mistake, or deception as to the source or origin of their real estate services, or the affiliation, sponsorship, or other relationship between the parties in violation of the common law of the state of California.

104. Defendants' and their Sales Associates' conduct also constitutes an attempt to trade on the goodwill that RE/MAX has developed, all to the damage of RE/MAX.

105. RE/MAX has no adequate remedy at law.

### Relief Sought

WHEREFORE, RE/MAX requests that this Court:

A. Grant preliminary and permanent injunctive relief enjoining Defendants, and their related entities, agents, servants, employees, successors, and assigns, and all those in privity, acting in concert, or in participation with them, including but not limited to the Sales Associates, from further breaching the Franchise Agreement, including, without limitation, by using the RE/MAX Marks and Copyrighted Works, including but not limited to use on promotional signs, premise and/or storefront signs, property signs, as a trade name, in any domain name, and online.

B. Grant preliminary and permanent injunctive relief enjoining Defendants and their related entities, agents, servants, employees, successors, and assigns, and all those in privity, acting in concert, or in participation with them, including but not limited to the Sales Associates, from:

  i. imitating, copying, duplicating, manufacturing, producing, circulating, or otherwise making any use of the RE/MAX Marks or any mark confusingly similar to the RE/MAX Marks;

  ii. using any unauthorized copy or colorable imitation of the RE/MAX Marks, or false designation of origin or description, in such fashion as is likely to relate or connect Defendants with RE/MAX or the RE/MAX Network or cause confusion;

  iii. using any false designation of origin or false description which can or is likely to lead the trade or public, or individual members thereof, to believe mistakenly that any service advertised, promoted, offered, or sold by Defendants or their Sales Associates is sponsored, endorsed, connected with, approved, or authorized by RE/MAX;

  iv. causing likelihood of confusion or injury to RE/MAX's business reputation

1 | and to the distinctiveness of the RE/MAX Marks by unauthorized use of identical or confusingly
2 | similar marks or designs;

3 |     v.    engaging in any other activity constituting unfair competition or infringement
4 | of the RE/MAX Marks or RE/MAX's rights in, or to use, or to exploit the same; and

5 |     vi.    assisting, aiding, or abetting another person or business entity in engaging or
6 | performing any of the activities enumerated in subparagraphs (i) through (v) above.

7 |     C.    Find Defendants liable for the causes of action alleged against them in this
8 | Complaint.

9 |     D.    Order Defendants to cease infringing RE/MAX's Copyrighted Works pursuant to 17
10 | U.S.C. § 502 and order impounded all infringing items and all copies, plates, molds, or other articles
11 | by which such items may be reproduced, pursuant to 17 U.S.C. § 503.

12 |     E.    Order Defendants and their principals, agents, servants, employees, successors, and
13 | assigns of and all those in privity, acting in concert, or in participation with Defendants who receive
14 | actual notice of said order, to deliver up, or at RE/MAX's election certify the destruction or removal
15 | of, all signs, articles, promotional materials, advertising and any other printed materials of any kind
16 | bearing the RE/MAX Marks, and any mark confusingly similar to the RE/MAX Marks, or any
17 | design substantially similar to the Copyrighted Works.

18 |     F.    Find Defendants liable, jointly and severally, and award to RE/MAX monetary
19 | damages in an amount to be fixed by the Court in its discretion as just, including, but not limited to,
20 | past-due fees and other amounts owed under RE/MAX's breach of contract claim, all of Defendants'
21 | profits or gains of any kind resulting from Defendants' willful infringement, counterfeiting, and/or
22 | acts of unfair competition, and any damages RE/MAX suffered as a result of Defendants' actions
23 | pursuant to 15 U.S.C. § 1117(a) and 17 U.S.C. § 504, said damages to be trebled pursuant to 15
24 | U.S.C. § 1117(b), and RE/MAX's reasonable attorneys' fees, costs, and exemplary damages in view
25 | of the intentional nature of the acts complained of in this Complaint and the exceptional nature of
26 | this case, pursuant to 15 U.S.C. § 1117 (a)-(b), 17 U.S.C. § 505, and applicable common law, state
27 | statutory law, and federal law.

28 | ///

G. At RE/MAX's election at any time prior to judgment in this matter, award to RE/MAX instead of actual damages for counterfeiting, statutory damages under 15 U.S.C. § 1117(c) and instead of actual damages for copyright infringement, statutory damages under 17 U.S.C. § 504(c).

H. Although a reasonable royalty is generally insufficient, find that one reasonable measure of damages owed to RE/MAX by Defendants for continued use of the RE/MAX Marks and Copyrighted Works after termination of the Franchise Agreement is a reasonable royalty, as determined by in part by the amount of fees Defendants would have owed RE/MAX for use of the RE/MAX Marks under a valid Franchise Agreement.

I. Award RE/MAX pre- and post-judgment interest on any monetary award made part of the judgment against Defendants.

J. Grant to RE/MAX such other and further relief as the Court may deem just, proper, and equitable under the circumstances.

Dated: May 17, 2017

Respectfully submitted,

*/s/ Ben M. Davidson*
Ben M. Davidson
DAVIDSON LAW GROUP, ALC

**ATTORNEY FOR PLAINTIFF
RE/MAX, LLC**

## REQUEST FOR JURY TRIAL

RE/MAX requests a trial by jury on all issues so triable.

Dated: May 17, 2017

                                                        Respectfully submitted,

                                                        */s/ Ben M. Davidson*
                                                        Ben M. Davidson
                                                        DAVIDSON LAW GROUP, ALC

                                                        **ATTORNEY FOR PLAINTIFF**
                                                        **RE/MAX, LLC**